UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14307-CIV-MARRA

OLOF MARCUS KANGRO and
KANAN SHETH,

Plaintiffs,

vs.

THE CITY OF PORT ST. LUCIE, and
OFFICER JAMES BECKER,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants City of Port St. Lucie and Officer James Becker's Motion to Dismiss Plaintiff's Complaint (DE 14). The motions are fully briefed and ripe for review. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiffs' Olof Marcus Kangro ("Kangro") and Kanan Sheth ("Sheth") six-count Complaint brings claims against Officer James Becker ("Officer Becker") and the City of Port St. Lucie (collectively "Defendants") for false arrest, wrongful imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 (count one), negligence of Becker (count two), loss of consortium (count four), false imprisonment (count five), and malicious prosecution (count six). Plaintiffs' Complaint further brings a claim against the City of Port St. Lucie for negligence of the Police Department (count three).

According to the allegations of the Complaint, on or about May 26, 2014, Kangro was dining with his family at a restaurant in the Club Med Resort in St. Lucie County, where he and his family were visiting from New York. (DE 1 ¶¶ 11-13. During dinner, Kangro's two-year-old-son "was a little rambunctious and was placed in time out." (DE 1 ¶ 13.)

Shortly thereafter, to the family's surprise, several police officers appeared from the Port St. Lucie Police Department, including Officer Becker. (DE 1 ¶ 14.) The officers, including Officer Becker, contacted the Florida Department of Children and Families ("FDCF"). Kangro and Sheth were detained for four hours until FDCF agents arrived. (DE 1 ¶ 15.) After meeting with Kangro and Sheth, FDCF determined that no abuse had occurred. (DE 1 ¶ 15.) Despite FDCF's findings, Officer Becker continued the detention, eventually arresting and transporting Kangro to the police station. (DE 1 ¶ 16.) Kangro was arrested and charged with a violation of section 827.03(2)3, Fla. Stat. for knowingly or willfully abusing a child, a felony. (DE 1 ¶ 18.)

Officer Becker's arrest affidavit describes that he met with the complainants, Lisa Helton and Ryan Mattingly, and that they observed that Nikkhil Kangro was crying and acting up in a café area of the Club Med resort. (DE 1 ¶ 17.) It attests that the complainants observed Kangro as he shook the child's high chair violently, grabbed the child by the chin and shook his face back and forth while shouting loudly and threateningly, placed a cloth napkin over the child's face to muffle his crying, and threw the napkin at his face. (DE 1 ¶ 17.) It further attests that a server at the café, Elisabeth Witkowski, observed the child start to fuss after being placed in a high chair and that Kangro shook the high chair to stop him and then flicked him twice in the face with a linen dinner napkin. (DE 1 ¶ 17.) Officer Becker's affidavit describes a small bruise that he observed on the child's left cheek. (DE 1 ¶ 17.) It then describes placing Kangro under arrest,

2

telephoning FDCF, waiting until an FDCF investigator responded and conducted an initial investigation, and transporting Kangro to St. Lucie County Jail for processing and booking. (DE 1 ¶ 17.)

In making his arrest affidavit, Officer Becker failed to disclose all of the relevant witnesses. (DE 1 ¶ 17.) Officer Becker was investigated by the Police Department internal affairs department in connection with this arrest. (DE 1 ¶ 24.) Dr. Pereira and Abby Pereira were exculpatory witnesses that were not disclosed in Officer Becker's arrest affidavit. (DE 1 ¶ 25.) The Police Department found Officer Becker incompetent for failure to include these witnesses in his report and affidavit. ((DE 1 ¶ 25.) That investigation included statements from Dr. Pereira that he told Officer Becker that he did not see anything significant between Kangro and his child and did not specifically see Kangro rub a napkin in his child's face in an aggressive manner. (DE 1 ¶ 24.) The investigation also included a statement from Abby Pereira relating that she spoke with Officer Becker, that Kangro's child was shouting and throwing things in the restaurant, that Kangro and Sheth were disciplining him, and that she did not see either Kangro of Sheth touch the child. (DE 1 ¶ 24.) Abby Pereira was not watching Kangro and Sheth the whole time. (DE 1 ¶ 24.) Further, Abby Pereira communicated that Kangro's child had a bruise on its face from a prior fall while at a swimming pool, that she was present during the accidental fall, and that she noticed a bruise on the child's face later that day. (DE 1 ¶ 24.)

The charges against Kangro were dismissed. (DE 1 ¶ 22.) The child welfare investigations in both Florida and New York were also dismissed. (DE 1 ¶ 22.) As a result of the charges, Kangro was prohibited from having contact with his family, was forced out of his home, and the corresponding New York agency to the FDCF conducted home visits. (DE 1 ¶ 20.)

Further, Kangro was forced to expend monies on defense counsel and investigation into the claims. (DE 1 ¶ 23.) Finally, Kangro also expended monies in an attempt to clean up his name and remove newspaper stories placed on the internet as a result of the charges. (DE 1 ¶ 23.)

The Complaint alleges that had Officer Becker been truthful, accurate, and complete in the arrest affidavit, by including statements from Dr. Pereira and Abby Pereira, no charges would have been brought against Kangro. (DE 1 ¶ 19.) Further, had Officer Becker relied upon the DFCF's statements that no abuse had occurred, Mr. Kangro would never have been placed in jail. (DE 1 ¶ 19.)

Defendants moves to dismiss on the following grounds. First, addressing the Count I claim under § 1983, Officer Becker moves to dismiss Kangro's claim under § 1983 based on the defense of qualified immunity. Specifically, Officer Becker asserts that arguable probable cause existed at the time of the arrest or detention of Kangro and thus Kangro's claims for false arrest and false imprisonment are barred. Relatedly, the City of Port St. Lucie moves to dismiss Kangro's claim under § 1983 against it based on the holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its rejection of government liability under § 1983 on a theory of respondeat superior. The City of Port St. Lucie asserts that the Complaint fails to specifically allege any custom of policy in this matter, fails to allege who the final policymaker was, and have failed to identify a clearly established constitutional right that was allegedly violated. As such, the City of Port St. Lucie concludes that Plaintiffs have failed to state a cause of action.

Addressing Count II, Plaintiffs note that Count II was titled against Officer Becker but also note that Plaintiffs press liability under respondeat superior and pray for damages from both Officer Becker and the City of Port St. Lucie. Defendants urge that Plaintiffs have failed to

allege the duty owed by Officer Becker, that there is no duty to have included additional information or report information to prosecutors, and that a tort for negligent arrest or negligent investigation simply does not exist.  Accordingly, Defendants urge Count II to be dismissed as a matter of law.

Similarly, Defendant City of Port St. Lucie asserts that Count III, alleging the negligence of the City of Port St. Lucie, is subject to dismissal.  Defendants argue that the City of Port St. Lucie cannot be liable for negligent training as a result of its employment of Officer Becker.  Defendants emphasize that the Complaint fails to allege sufficient facts to state a cause of action for negligent training or supervision.  Further, Defendant City of Port St. Lucie asserts that the Complaint fails to plead facts sufficient to maintain a cause of action under a theory of negligent retention.  As such, the City of Port St. Lucie urges that Count III should be dismissed as a matter of law.

Additionally, Defendants urge that Count IV, the loss of consortium claim, is derivative of other claims, and as those claims must be dismissed as a matter of law, so too should Count IV be dismissed.  Defendants further urge that Counts V and VI, for false imprisonment and malicious prosecution, respectively, should be dismissed as a matter of law.  Defendants argue that the existence of probable cause to arrest Kangro requires these claims be dismissed as a matter of law.

Finally, the City of Port St. Lucie raises sovereign immunity under the Eleventh Amendment as to Plaintiffs claims in tort for negligence in Counts II and III, false imprisonment in Count V, and malicious prosecution in Count VI. The City of Port St. Lucie argues that it is immune from suit under Florida's sovereign immunity law and that Officer Becker is immune

from suit under the same statute for actions taken within the scope of employment and without bad faith of malicious purpose.

## II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

III.  Discussion

A. Section 1983 Claim Against Officer Becker

The Court will first address Officer Becker's arguments for dismissal of Kangro's section 1983 claim–the only claim brought under federal law in Plaintiffs' Complaint (DE 1).  In moving to dismiss, Officer Becker states that probable cause existed for the arrest of Kangro and that qualified immunity protects Officer Becker from liability.  The Court begins by noting that section 1983 provides a cause of action for constitutional violations committed under color of state law.  A violation of the Fourth Amendment is cognizable under section 1983. *Reyes v. Maschmeier*, 446 F.3d 1199, 1202 (11th11th Cir. 2006).  When evaluating claims of qualified immunity, the court must consider whether a constitutional right has been violated and whether the right was clearly established by the law at the time of the violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  A court may exercise its "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 129 S. Ct. 808, 817-18 (2009).

An arrest without probable cause clearly violates the rights enshrined under the Fourth Amendment of the Constitution. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998).  Probable cause exists where the facts and circumstances presented to a law enforcement officer "would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).  However, law enforcement officers who make arrests without probable cause are "'entitled to qualified immunity if there was arguable probable cause for the arrest.'" *Durruthy*, 351 F.3d 1080, 1089 (11th Cir. 2003) *quoting Jones v. Cannon*, 174 F.3d

1271, 1283 (11th Cir. 1999).  Arguable probable cause exists when "an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy*, 351 F.3d at 1089 (quotation marks and citations omitted).  "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotations marks and citations omitted).  Further, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002).

Based on the allegations of the First Amended Complaint, viewing the facts in the light most favorable to Kangro, the Court finds that there was arguable probable cause to arrest Kangro.  When Officer Becker arrived on scene, he went about interviewing witnesses, including complainants Lisa Helton and Ryan Mattingly.  In multiple witness interviews conducted, Officer Becker was toldthat an incident had occurred during which Kangro acted "aggressively" or "violently" toward his child, shook the child's high chair, covered the child's face with a cloth napkin, and "flicked" the child's face with a cloth napkin.  (DE 1 ¶ 17.)  Officer Becker discussed the allegations with Kangro and obtained a denial of those allegations from Plaintiff Kangro.  (*Id.*)  Additionally, Officer Becker saw a bruise on the child's cheek.  (*Id.*)  Assessing the totality of these circumstances, arguable probable cause existed to arrest Kangro.

The existence of arguable probable cause was not dissipated or nullified by the conflicting witness statements provided by Dr. Pereira and Abby Pereira or by the FDCF initial

investigation. *See Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906, 912 (11th Cir. 2015) (finding arguable probable cause "[d]espite the conflicting witness statements," where "the facts could have led a prudent officer to believe that reasonably trustworthy information established probable cause for [the offense]"). To hold otherwise would require Officer Becker "to sift through conflicting evidence or resolve issues of credibility" in clear contravention of this Circuit's precedent on the existence of probable cause. *See Dahl*, 312 F.3d at 1234.

Indeed, Plaintiffs allege only that Officer Becker "failed to disclose all of the relevant witnesses when making the arrest" and improperly failed to "re[ly] upon FDCF's statements that no abuse had occurred" in making the arrest. (DE 1 ¶¶ 17, 19.) Neither of these issues, though, necessarily nullify the existence of arguable probable cause. Rather, it is clear from the pleadings that Officer Becker obtained both the witness statements and FDCF initial investigation at the time of his investigation and made his probable cause determination with the knowledge of the conflicting witness statements and result of the FDCF initial investigation. (DE 1 ¶ 17.)

Circumstances in which probable cause was found absent as a result of a law enforcement officers failure to investigate the incident or obtain witness statements provide stark contrast to the events alleged. *See Howard v. Gee*, 538 F. App'x 884, 890–91 (11th Cir. 2013) (denying qualified immunity where a law enforcement officer made little or no attempt to investigate the incident, ignored arrested's recitation of events, and declined to speak with available witnesses); *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2013) (denying qualified immunity where arresting officers declined to take statements from arrested or available witnesses). Officer Becker's probable cause determination, though, was not the result of an alleged failure to investigate but instead was undertaken after having obtained witness statements, including

9

conflicting witness statements, and proceeding with the arrest of Kangro.

The fact that Officer Becker may have been negligent in "fail[ing] to disclose all of the relevant witnesses when making the arrest" and in failing to "re[ly] upon FDCF's statements that no abuse had occurred" does not eliminate the arguable probable cause that existed for the arrest. (DE 1 ¶¶ 17, 19.)   Negligence does not give rise to a constitutional deprivation.  *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.1996) (neither negligence or gross negligence rises to the level of a constitutional deprivation); *Harris v. Coweta County*, 21 F.3d 388, 392 (11th Cir.1994) (negligence is not a constitutional tort under section 1983).  As such, claims of negligence are not cognizable under Section 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986).

Accordingly, having found Officer Becker's determination of probable cause reasonable in light of the circumstances, the Court concludes that Officer Becker is entitled to qualified immunity and Count I, as it relates to Officer Becker, must be dismissed.

B. Count I: Section 1983 Claim Against the City of Port St. Lucie

Because the claim against Officer Becker under § 1983 is barred by qualified immunity, Plaintiffs' claim against the City of Port St. Lucie necessarily fails.  Additionally, however, even assuming a valid claim had been asserted against Officer Becker, Plaintiffs failed to allege a valid § 1983 claim against the City.

While municipalities and other local government entities are included among those persons to whom Section 1983 applies, such entities may not be held liable on a respondeat superior theory.  *Board of County Comm'r v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  The municipality itself must have caused the constitutional violation at issue.  *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1145 (11th Cir.2007).  Thus, Plaintiffs can

only succeed on their Section 1983 claim against the City of Port St. Lucie by showing that their injuries were the result of an unwritten unlawful "policy or custom" of the Sheriff's Office. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

"An act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so wide-spread as to have the force of law." *Brown*, 520 U.S. at 404. The custom must be "so well settled and wide-spread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge1 of it yet did nothing to end the practice." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989); *Wakefield v. City of Pembroke Pines*, 269 Fed. App'x. 936, 939, (11th Cir.2008); *see also Spell v. McDaniel*, 824 F.2d 1380, 1386–88 (4th Cir.), cert. denied, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). Moreover, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819–20, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell*, 436 U.S. at 694–95; *Kibbe v. City of Springfield*, 777 F.2d 801, 809–10 (1st Cir.1985); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Normally, random acts or isolated incidents are insufficient. *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir.1994).

Plaintiffs have failed to allege that the purported constitutional violation was the result of a custom or practice of the Port St. Lucie Police Department. Plaintiffs' claim against the City is based on an untenable respondeat superior theory for municipal liability under Section 1983. As such, Plaintiffs cannot sustain a Section 1983 claim against the City of Port St. Lucie. Accordingly, Count I must be dismissed as it relates to the City of Port St. Lucie.

C. Counts II - VI: Remaining Claims

With the dismissal of the federal claim against both Officer Becker and the City of Port St. Lucie, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claims. ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.") 28 U.S.C. 1367(c)(3).

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(1) Defendants' Motion to Dismiss (DE 9) COUNT I as it relates to Officer Becker is **GRANTED.  COUNT I is DISMISSED WITH PREJUDICE** as to Defendant Officer Becker.

(2) Defendants Motion to Dismiss (DE 9) COUNT I as it relates to City of Port St. Lucie is **GRANTED.  COUNT I is DISMISSED WITH PREJUDICE** as to Defendant City of Port St. Lucie.

(3) COUNTS II, III, IV, V, and VI of Plaintiffs' Complaint (DE 1) are **DISMISSED WITHOUT PREJUDICE**. Having dismissed the federal action, the Court declines to exercise its supplemental jurisdiction over these claims.  Plaintiffs may

bring these actions in a Florida state court of appropriate jurisdiction.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of March, 2017.

_____
KENNETH A. MARRA
United States District Judge